IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**UNITED STATES OF AMERICA**

v.                                              **Criminal Case No. 3:13cr189-2**

**CORNELIUS E. CLAYTON,**

**Defendant.**

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Cornelius E. Clayton's Motion to Reduce Sentence Pursuant to Section 603(b) of the First Step Act (the "Motion for Compassionate Release"). (ECF No. 254.) The United States responded in opposition to the Motion. (ECF No. 261.) Clayton replied. (ECF No. 262.)

The matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. For the reasons that follow, the Court will grant in part Mr. Clayton's Motion, and reduce his sentence from 408 months to 234 months.

### I. Background

On November 5, 2013, Mr. Clayton was charged in a five-count indictment: two counts of robbery and one count of conspiracy to obstruct, delay, and affect commerce by robbery, in violation of 18 U.S.C. § 1951(a), and two counts of use, carry, and brandish firearm during and in relation to a felony crime of violence, in violation of 18 U.S.C. § 924(c). (ECF No. 1, at 1–8.)

On April 10, 2014, Mr. Clayton entered into a written plea agreement with the United States in which he pled guilty to one count of conspiracy to obstruct, delay, and affect commerce by robbery (Count One) and two counts of use, carry, and brandish firearm during and in relation

to a felony crime of violence (Counts Three and Five). (ECF No. 66 ¶ 1.) The Plea Agreement, (ECF No. 66), and the Statement of Facts, (ECF No. 67), describe the conduct in Mr. Clayton's underlying offense. Between August 9 and September 26, 2013, Mr. Clayton and his co-conspirators robbed nine fast food restaurants and one convenience store. (ECF No. 67, at 2–5.) While two co-conspirators served as lookouts and getaway drivers, Mr. Clayton and another co-conspirator entered the affected businesses with their faces covered. (ECF No. 67 ¶ 4.) Some of these robberies involved elements of abduction. (ECF No. 96 ¶¶ 12–21.) During the August 9, 2013 and September 26, 2013 robberies, either Mr. Clayton, his co-conspirator, or both, brandished a firearm. (ECF No. 67 ¶¶ 9–10.)

Prior to sentencing, the probation officer prepared the Presentence Report ("PSR") for Mr. Clayton. (ECF No. 96.) According to the law at the time, Mr. Clayton's total offense level of 31 and criminal history category of I resulted in a Sentencing Guidelines range of 108–135 months' imprisonment on Count One, a mandatory minimum of 84 months on Count Three (to be served consecutively to Count One), and a mandatory minimum of 300 months on Count Five, (to be served consecutively to Counts One and Three). (ECF No. 96 ¶¶ 76–78.) The minimum sentence under the Guidelines in 2014 would have been 492 months' imprisonment, or 41 years.

On July 7, 2014, the Court sentenced Mr. Clayton to a sentence below the Sentencing Guideline range and imposed a term of "twenty four (24) months on Count [One], eighty four (84) months on Count [Three,] and three hundred (300) months on Count [Five], all to be served consecutively." (ECF No. 110, at 2.) Mr. Clayton's term of imprisonment imposed was 408 months', or 34 years', imprisonment. (ECF No. 110, at 2.) Mr. Clayton is currently housed at FCI Fort Dix at Joint Base McGuire-Dix-Lakehurst, New Jersey. *See Fed. Inmate Locator*,

BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited Feb. 23, 2024). The Bureau of Prisons ("BOP") lists Clayton's release date as September 16, 2042. *See id.* Mr. Clayton has served 10 years, 1 month, and 8 days as of February 23, 2024. (*See* ECF No. 96, at 1.)

On July 9, 2022, Mr. Clayton, acting through counsel, filed the instant Motion for Compassionate Release. (ECF No. 254.) In the Motion, Mr. Clayton discusses his rehabilitation while in prison, his young age at the time of his offense, and the sentencing disparity resulting from his stacked § 924(c) convictions. (ECF No. 254, at 8–16.) In support of his claims of rehabilitation, Mr. Clayton references his completion of several programs aimed towards recovery and rehabilitation, as well as his educational efforts such as obtaining his GED and participating in job readiness courses. (ECF No. 254, at 8–9.) Mr. Clayton urges the Court to take into consideration that he was only nineteen at the time of his offense. (ECF No. 254, at 10–14.) Mr. Clayton also contends that, if sentenced today, Count Five would result in an 84-month, rather than a 300-month, sentence, due to Congress ending the practice of "stacking" multiple 18 U.S.C. § 924(c) convictions in the same prosecution. (ECF No. 254, at 1–2.) Under the current provisions, the minimum within-guideline sentence Mr. Clayton could receive would be 276 months', or 23 years', imprisonment.

Mr. Clayton requests a reduction of his sentence to 192 months', or 16 years', imprisonment. (ECF No. 254, at 2.) His request would retain the variant sentence of twenty-four months' imprisonment on Count One imposed by Judge James R. Spencer.

The United States opposes. (ECF No. 261.) The United States asserts that Mr. Clayton's stacked 18 U.S.C. § 924(c) sentences are not an extraordinary and compelling reason for relief. (ECF No. 261, at 5–9.) The United States also contends that the sentencing factors set forth in

3

18 U.S.C. 3553(a)[1] weigh against relief. (ECF No. 261, at 9–13.) The government argues that the brutal nature of the many robberies, which involved abduction and brandishing firearms

---

[1] Section 3553(a) of Title 18 of the United States Code states:

The Court in determining the particular sentence to be imposed, shall consider—

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .

(5) any pertinent policy statement—

(A) issued by the Sentencing Commission . . .

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

directly at some victims, clearly counsel against granting a sentence reduction in Mr. Clayton's case. (ECF No. 261, at 6–7.)

## II. Compassionate Release Under the First Step Act of 2018

### A. Legal Standard

Prior to the First Step Act of 2018, an individual could not petition the district court for relief on compassionate release grounds without approval from the BOP. *See Coleman v. United States*, 465 F. Supp. 3d 543, 546 (E.D. Va. 2020). In 2018, Congress enacted the First Step Act to provide incarcerated individuals the opportunity to directly petition the courts for compassionate release under 18 U.S.C. § 3582(c)(1)(A).[2] First Step Act of 2018, Pub. L. No.

---

[2] Section 3582(c) states, in pertinent part:

The court may not modify a term of imprisonment once it has been imposed except that—

(1) in any case—

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction . . .

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A).

5

115–391, 115th Cong. (2018). Under the First Step Act, criminal defendants may petition courts on their own initiative to modify their sentences. *Coleman*, 465 F. Supp. 3d at 546.

Before granting a reduction, courts must consider the factors set forth in 18 U.S.C. § 3553(a), *see* 18 U.S.C. § 3582(c)(1)(A), and evidence of rehabilitation and other post-conviction conduct. *See United States v. Martin*, 916 F.3d 389, 397–98 (4th Cir. 2019) (requiring consideration of post-conviction evidence and statutory sentencing factors in the context of a sentence reduction sought pursuant to § 3582(c)(2)); *see also United States v. McDonald*, 986 F.3d 402, 412 (4th Cir. 2021) (extending *Martin* to motions filed pursuant to § 3582(c)(1)(B)). However, a petitioner's rehabilitation alone does not provide sufficient grounds to warrant a sentence modification. *See* 28 U.S.C. § 994(t).[3]

### B. Exhaustion of Administrative Remedies

Although the Court generally cannot "modify a term of imprisonment once it has been imposed," the defendant may bring a motion to modify his or her sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. McCoy*, 981 F.3d 271, 283 (4th Cir. 2020) ("Congress, aware of the BOP's

---

[3] 28 U.S.C. § 994(t) states:

> The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. *Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.*

28 U.S.C. § 994(t) (emphasis added).

6

history of extensive delays, also provided a '30-day lapse' alternative, under which a defendant may proceed directly to district court if his [or her] request is not acted on within that time."). "Accordingly, a petitioner seeking compassionate release is generally required to exhaust his or her administrative remedies prior to bringing a motion before the district court." *Casey v. United States*, No. 4:18cr4, 2020 WL 2297184, at *1 (E.D. Va. May 6, 2020); *see also United States v. Kibble*, 992 F.3d 326, 330 (4th Cir. 2021) (same).

In his Motion for Compassionate Release, Mr. Clayton submits, and the United States does not dispute, that he has properly exhausted his request for compassionate release pursuant to U.S.C. § 3582(c)(1)(A). (*See* ECF No. 254, at 7; ECF No. 261, at 2.) This Court so finds.

### C. Courts Must Find Extraordinary and Compelling Reasons Justifying Compassionate Release

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify terms of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction[.]" 18 U.S.C. § 3582(c)(1)(A)(i). Congress did not define "extraordinary and compelling reasons" in the statute. The United States Sentencing Commission does, however, further define "extraordinary and compelling reasons." U.S.S.G. § 1B1.13(b); *see United States v. Burrell*, No. 3:04-CR-364 (JAG), 2023 WL 7726404, at *4 n.7 (E.D. Va. Nov. 15, 2023). The Sentencing Commission

> addressed the issue in a policy statement, United States Sentencing Guideline § 1B1.13, which provided the BOP with several categories of extraordinary and compelling reasons to consider. For years following the passage of the First Step Act, the Sentencing Commission failed to update § 1B1.13 to account for motions filed by defendants, meaning the policy did not bind the courts when presented with a defendant's motion for compassionate release. A court therefore remained empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.

7

*Burrell*, 2023 WL 7726404, at *4, n.7 (internal citations cleaned up for readability) (citing *McCoy*, 981 F.3d at 276, 281–82, 284).

The 2021 Sentencing Guidelines enumerated four bases on which to evaluate a motion for compassionate release. U.S.S.G. § 1B1.13 cmt. n.1(A)–(D) (U.S. SENT'G COMM'N 2021) identified four bases to establish extraordinary and compelling reasons for release:

(A) medical conditions;
(B) age;
(C) family circumstances; and,
(D) other reasons.

U.S.S.G. § 1B1.13 cmt., n.1(A)–(D).

In 2023, the United States Sentencing Commission published new sentencing guidelines amendments (the "2023 Sentencing Guidelines Amendments" or "2023 Amendments"). Pursuant to the 2023 Amendments, the Sentencing Guidelines now identify six instructive categories of extraordinary and compelling reasons that may allow for a sentence reduction.[4]

These are:

(1) certain medical circumstances of the defendant, such as terminal illness or the inability to receive specialized medical care while incarcerated, [U.S.S.G.] § 1B1.13(b)(1)[5];

(2) the defendant's age…is at least 65 years old, *id.* § 1B1.13(b)(2)[6];

(3) the defendant's family circumstances, *id.* § 1B1.13(b)(3)[7];

---

[4] *See* Appendix A, U.S.S.G § 1B1.13(b) (2023).

[5] *See* App. A, at **U.S.S.G. § 1B1.13(b)(1)**; *cf.* Appendix B, **U.S.S.G. § 1B1.13 cmt. n.1(A).**

[6] *See* App. A, at **U.S.S.G § 1B1.13(b)(2)**; *cf.* App. B, at **U.S.S.G. § 1B1.13 cmt. n.1(B).**

[7] *See* App. A, at **U.S.S.G. § 1B1.13(b)(3)**; *cf.* App. B, at **U.S.S.G. § 1B1.13 cmt. n.1(C).**

(4) the fact that the defendant, while in custody, was the victim of sexual or physical abuse committed by, or at the direction of, a correctional officer, *id.* § 1B1.13(b)(4) [8];

(5) 'any other circumstances or combination of circumstances . . . similar in gravity to' the circumstances 'described in paragraphs (1) through (4).' *Id.* § 1B1.13(b)(5) [9]; and,

(6) the defendant received an 'unusually long sentence,' *id.* § 1B1.13(b)(6).[10]

*United States v. Tucker*, 2023 WL 8357340, at *5 (D. Md. Dec. 1, 2023).

The United States Court of Appeals for the Fourth Circuit explained—even before the 2023 Sentencing Guidelines Amendments—that "[w]hen a defendant exercises his [or her] new right to move for compassionate release on his [or her] own behalf . . . § 1B1.13 does not apply, and . . . § 3582(c)(1)(A)'s consistency requirement does not constrain the discretion of district courts." *McCoy*, 981 F.3d at 281. The Fourth Circuit has further illuminated that:

> [w]hen Congress authorized district courts, as a matter of discretion, to release an inmate from prison based on extraordinary and compelling reasons, it did so to introduce compassion as a factor in assessing ongoing terms of imprisonment, authorizing a district court to give greater weight to an inmate's personal circumstances—when sufficiently extraordinary and compelling—than to society's interests in the defendant's continued incarceration and the finality of judgments.

*United States v. Hargrove*, 30 F.4th 189, 197 (4th Cir. 2022).

Since *McCoy* and *Hargrove*, the 2023 Amendments have taken effect. These Amendments clarify the Commission's view on what could constitute "extraordinary and compelling reasons" for a sentence reduction under the First Step Act. *See Burrell*, 2023 WL

---

[8] *See* App. A, at **U.S.S.G. § 1B1.13(b)(4).**

[9] *See* App. A, at **U.S.S.G. § 1B1.13(b)(5);** *cf.* App. B., at **U.S.S.G. § 1B1.13 cmt. n.1(D).**

[10] *See* App. A, at **U.S.S.G. § 1B1.13(b)(6).**

7726404, at *4 n.7 ("[t]he Fourth Circuit has yet to address the impact the amended Sentencing Guidelines have on *McCoy* and similar rulings or precisely how courts should apply the amended policy statement in motions for compassionate release, particularly motions filed before November 1, 2023."). The *McCoy* court has noted, however, that the Guidelines, while helpful, are merely advisory and do not bind the Court. "[D]istrict courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *McCoy*, 981 F.3d at 284 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020)).

The United States Supreme Court has determined that "the First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence[.]" *Concepcion v. United States*, 142 S. Ct. 2389, 2404 (2022). District courts within the Fourth Circuit have decided that sentencing disparities resulting from intervening changes in the Fourth Circuit's interpretation of the sentencing guidelines can constitute an "extraordinary and compelling reason" for compassionate release.[11] *See, e.g., United States v. Redd*, 444 F. Supp. 3d 717, 723–724 (E.D. Va. 2020) (finding that the "gross disparity between the sentence Mr. Redd received and the sentence he would have received after the First Step Act . . . constitute[s] [an] extraordinary and compelling reason[] that warrant[s] a reduction to Mr. Redd's sentence"); *see also United States v. Fennell*, 570 F. Supp. 3d 357, 363 (W.D. Va. 2021) (finding that "the significant disparity between Fennell's current sentence and the [ten years

---

[11] The 2023 Sentencing Guideline Amendments added subsection (c) to U.S.S.G. § 1B1.13, which provides that a change in the law, or in non-retroactive Guidelines amendments, ordinarily shall not be considered when determining whether extraordinary and compelling reasons exist. However, subsection (c) includes an important caveat: "if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction." U.S.S.G. § 1B1.13(c) (2023).

10

reduced] sentence he would face today for the same offense provides an extraordinary and compelling basis for a sentence reduction under § 3582(c)(1)(A)"); *United States v. Arey*, 461 F. Supp. 3d 343, 350 (W.D. Va. 2020) ("The fact that if [the defendant] were sentenced today for the same conduct he would likely receive a [forty year] lower sentence than the one he is currently serving constitutes an 'extraordinary and compelling' reason justifying potential sentence reduction under § 3582(c)(1)(A)").

There is a plethora of unpublished cases that follow this same reasoning. *See, e.g., United States v. Banks*, 2022 WL 220638, at *2–3, *6 (W.D. Va. Jan. 25, 2022) (88-month difference between the low end of defendant's career offender sentencing range and the low end of the non-career offender sentencing range was "such [a] gross disparit[y] in sentencing" that it constituted an extraordinary and compelling circumstance); *United States v. Williams*, No. 1:14-CR-428 (TSE), 2021 WL 5827327, at *6–7 (E.D. Va. Dec. 8, 2021) (difference of "more than three years longer than the high end of the guidelines that would have applied under *Norman*"[12] warranted a reduction in defendant's sentence from 168 months to 125 months); *United States v. Huggins*, 2021 WL 3025459, at *4 (W.D. Va. July 16, 2021) (sentencing disparity of more than five years was a "gross disparity" and an "extraordinary and compelling" reason warranting a sentence reduction); *but see United States v. Hinton*, No. 2:15-CR-80 (MSD), 2022 WL 988372, at *5 (E.D. Va. Mar. 31, 2022) (three to six year sentencing disparity "not so drastic that it constitutes an extraordinary and compelling reason for relief"). When considering the 2018 congressional modifications to stacked penalties for § 924(c) convictions

---

[12] *United States v. Norman*, 935 F.3d. 232 (4th Cir. 2019) (finding that defendant was subject to a lower guideline range because a drug conspiracy conviction did not constitute a "controlled substance offense" given that the statute of conviction "criminalize[d] a broader range of conduct than that covered by generic conspiracy").

11

that are relevant here, the Fourth Circuit has specifically held that "courts legitimately may consider, under the 'extraordinary and compelling reasons' inquiry, that defendants are serving sentences that Congress itself views as dramatically longer than necessary or fair." *McCoy*, 981 F.3d at 275, 285–86 (quoting *Redd*, 444 F. Supp. 3d at 723).

### 1. Unusually Long Sentence

The 2023 Sentencing Guidelines Amendments explain in greater detail what a court should consider when considering unusually long sentences as a basis for an extraordinary and compelling reason to grant compassionate release.

The relevant section of U.S.S.G. § 1B1.13(b) reads:

> (6) UNUSUALLY LONG SENTENCE.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6).

### D. Courts Must Weigh the Statutory Sentencing Factors Before Granting Compassionate Release

Even after finding a sufficient "extraordinary and compelling reason" for compassionate release, the Court must then consider the Section 3553(a) factors and any relevant post-conviction conduct before modifying a defendant's sentence. 18 U.S.C. § 3582(c)(1)(A); *Martin*, 916 F.3d at 397–98; *McDonald*, 986 F.3d at 412. The Court must weigh factors including "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The Court also must consider "the need for the sentence imposed . . . to promote respect for the law . . . ; to afford adequate deterrence to criminal

12

conduct; . . . [and] to protect from the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2). The statutory sentencing factors direct the Court to consider the kinds of sentences available and the sentencing range established for the offense. 18 U.S.C. § 3553(a)(4).

### III. Analysis

After due consideration, the Court will grant in part the Motion for Compassionate Release. (ECF No. 254.) Mr. Clayton submits, and the United States does not dispute, that he has exhausted his administrative remedies. (ECF No. 254, at 7; *see* ECF No. 261, at 2.) The Court will grant in part the Motion for Compassionate Release upon finding that the gross disparity in sentences resulting from Mr. Clayton's stacked § 924(c) convictions offers an "extraordinary and compelling reason" to support his request for relief. 18 U.S.C. § 3582(c)(1)(A)(i). The Court also finds that a reduction in sentence is supported by the sentencing factors set forth in 18 U.S.C. 3553(a).

#### A. The Disparity Between Mr. Clayton's Current Sentence and the Sentence he Would Receive Today is an Extraordinary and Compelling Reason for Relief

The Court finds that Mr. Clayton offers "extraordinary and compelling reasons" to support his request for a reduction in his sentence. 18 U.S.C. § 3582(c)(1)(A)(i).

Considering the specific circumstances of Mr. Clayton's offense, his 408-month sentence is "disproportionate to both 'the seriousness of the offense and to what Congress now deems appropriate for this kind of conduct.'" *McCoy*, 981 F.3d at 279 (quoting *United States v. Bryant*, No. 95-202-CCB-3, 2020 WL 2085471, at *5 (D. Md. Apr. 30, 2020)). The underlying robberies – ten in fewer than sixty days using weapons and force – inarguably are serious offenses. Mr. Clayton inflicted real and meaningful harm to the individuals he abducted or threatened with a gun during his robberies. But that same extremely serious conduct in Counts Three and Five would subject a defendant to a mandatory minimum sentence of 14 years'

13

imprisonment if sentenced today, not the 32-year minimum applicable during his sentencing in 2014.[13] Had Mr. Clayton received a sentence at the low end of the guideline range on Count One, under both provisions, the resulting disparity between the two minimum low-end guideline sentences would be 216 months, or 18 years.

Mr. Clayton's sentencing judge granted a downward variance as to Count One, the only count for which any discretion existed. Rather than the guideline range of 108–135 months, Mr. Clayton received a 24-month sentence on Count One. (ECF No. 248, at 10.) The sentencing court noted that the mandatory guidelines were "stratosphere[ic]" and greater than necessary. (ECF No. 248, 9:25.) Given this "legislative vice", (ECF No. 248, at 10:20–21), and based on other factors, the Court imposed a reduction of 84 months (seven years) below the minimum guideline range on Count One.

The 18-year differential between the minimum low-end guideline sentence 2014 and 2023 sentences patently constitutes a "gross disparity" between them.[14] See U.S.S.G. § 1B1.13 (b)(6). Even Mr. Clayton's 2014 variant sentence of 408 months' (34 years') imprisonment falls 132 months (11 years) above the minimum low-end guideline sentence that could be imposed today. This, too, is a gross disparity.

---

[13] The table below summarizes the differences in the statutory penalties applicable to Mr. Clayton before and after the First Step Act of 2018:

|  | **Original Penalty for two § 924(c)(1)(A)(ii) offenses in the same charging document** | **First Step Act (modifying mandatory penalties for stacked § 924(c)(1)(A)(ii) offenses)** |
|---|---|---|
| Mandatory minimum | 7 years (84 months) + 25 years (300 months) = 384 months | 7 years (84 months) + 7 years (84 months) = 168 months |
| Sentence Imposed | 384 months on Counts 3 and 5. (ECF No. 110, at 2.) | 168 months |

[14] Mr. Clayton has served at least ten years of the term of his imprisonment to further support the extraordinary and compelling reason for relief. U.S.S.G. § 1B1.13 (b)(6).

14

Finally, Mr. Clayton was 19 years old when he committed these offenses. He had not one past conviction or infraction – traffic or otherwise – on his record when he stood before the sentencing court in 2014. Mr. Clayton's "relative youth" and limited criminal history at the time of his offense further support relief. *See McCoy*, 981 F.3d at 274, 276, 286.

### B.   The 3553(a) Factors Support a Reduction in Mr. Clayton's Sentence

Even after finding that extraordinary and compelling grounds exist for a sentence modification under § 3582(c)(1)(A), a court still must consider any applicable 18 U.S.C. § 3553(a) factors.

In addition to the disproportionality of Mr. Clayton's sentence, the Court finds that the nature and circumstances of the offense weigh in favor of granting him a reduction in sentence. 18 U.S.C. § 3553(a)(1). Mr. Clayton committed serious and dangerous offenses, for which he will serve a 234 month, or nineteen and a half year, prison sentence after the Court grants a partial sentence reduction. Mr. Clayton accepted responsibility for his offense conduct and continues to do so today. (ECF No. 254-2, at 2 ("I have never blamed anyone for where I am because it was my responsibility to do what I knew was right just like [it's] my responsibility now to make sure I never make the same mistake again.").) After the sentence reduction, Mr. Clayton will still have approximately nine and a half years left to serve, and upon release Mr. Clayton will begin to serve a five-year supervised release term.

Although Congress has made clear that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" for sentence modification, 28 U.S.C. § 994(t), the Court may account for rehabilitative efforts when considering a defendant's risk of recidivism. *See Martin*, 916 F.3d at 397–98. Mr. Clayton's record of rehabilitation indicates a reduced risk. At the time of filing, Mr. Clayton had no institutional infractions, and he has now

15

been incarcerated for more than ten years. (ECF No. 96, at 1.) While incarcerated, he has received his High School Equivalency Credential (commonly called "GED" for General Education Development). (ECF No. 254-4, at 1.) Mr. Clayton had participated in, and successfully completed, numerous programs including the Bureau Rehabilitation and Values Enhancement or "BRAVE" program, (ECF No. 254-4, at 2), which Mr. Clayton credits for helping him "see even more where [he] went wrong and gave [him] the tools to accom[o]date [him] on [his] journey of building a better [self]." (ECF No. 254-2, at 3.) He has successfully completed a drug education and adverse childhood experience ("ACE") program. (ECF No. 254-4, at 6–7.) Finally, he graduated from masonry and forklift training, either of which could aid his search for employment once he is released. (ECF No. 254-4, at 8–9.)

As happened during his sentencing, many friends and family sent letters supporting Mr. Clayton, describing his noticeable growth and change since his incarceration began. In addition to his own, ten letters were filed. (ECF No. 254-3, at 1–18.) All describe him as a respectful, thoughtful, care-taking young man who had a warm smile. Most, like the sentencing judge, were dumbfounded by his serious criminal conduct. The acts of violence are especially disturbing. Most describe him as someone who wanted to take care of his family, especially his mother after she experienced abuse. Many letters mention his return to religion.

His family and friends identify his pride in being a big brother, and how he wants to counsel his younger brother to stay on the right path. His brother confirms that Mr. Clayton continues to help him, and his Godmother confirms that he regularly lectures his younger brother on the importance of going to college. (ECF No. 254-3, at 1, 3.) His Godfather separately observes that, even from prison, Mr. Clayton continues to remind his younger brother to avoid the criminal justice system. (ECF No. 254-3, at 5.)

16

Two friends credit him with pushing them to finish college and to help others. (ECF No. 254-3, at 15–18.) One reports that Mr. Clayton inspired her to pursue criminal justice as a career path, and the other reports that Mr. Clayton called him weekly while he attended Old Dominion University "to make sure [he] had been studying hard and [was] making the most out of" his college experience. (ECF No. 254-3, at 15–18.) Before his longtime friend became the Student President of the NAACP at ODU, Mr. Clayton encouraged him to share their story with children in an effort to change the children's lives. (ECF No. 254-3, at 17.) From prison, Mr. Clayton helped his friend "organize [] events" [for children] and he participated in those events, via letter, in his effort to "help others better than he [] helped himself." (ECF No. 254-3, at 17.) That friend expressed "no doubt …that if he is granted freedom, [Mr. Clayton] will dedicate his last breath to serving his people." (ECF No. 254-3, at 18.)

Mr. Clayton's Godmother and Godfather express willingness to help Mr. Clayton during his transition to life after prison. (ECF No. 254-3, at 3–6.) His parents express a strong desire to help in the transition when he is released, and his mother expresses pride in how he has grown while incarcerated. (ECF No. 254-3, at 2, 7–9.) Clearly Mr. Clayton has strong community ties and support. (ECF Nos. 254-3.) Ultimately, Mr. Clayton's rehabilitative efforts and lack of disciplinary infractions also support the Court's decision to grant him a sentence reduction. Indeed, the Court finds his active efforts to ensure that others do not follow in his path especially compelling.

All told, the Court concludes that the host of factors outlined above constitute extraordinary and compelling reasons to reduce Mr. Clayton's sentence. Even weighing the nature of the crimes Mr. Clayton committed, the Court finds that Mr. Clayton is entitled to a

reduction in his sentence, from 408 months to 234 months, is warranted. All other terms and conditions of Mr. Clayton's original sentence will remain the same.

## IV. Conclusion

For the reasons explained above, the Court will grant in part the Motion for Compassionate Release. (ECF No. 254.)

An appropriate Order shall issue.

Date: 2/23/24
Richmond, Virginia

/s/
M. Hannah Lauck
United States District Judge

18